**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOHN ALLEN, et al.,**

    **Plaintiffs,**

v.                                                                                                Case No. 3:08cv320/MCR

**MONSANTO COMPANY,
PHARMACIA CORPORATION,
SOLUTIA, INC.,
GARY MOORE,
and
FICTITIOUS DEFENDANTS NOS. 1-20,**

    **Defendants.**

_____/

**O R D E R**

    This tort action was initiated in the Circuit Court in and for Escambia County, Florida. Defendants removed the case to this court pursuant to 28 U.S.C. §1441, *et seq.*, following which plaintiffs filed the pending motion to remand.[1]  For the reasons that follow, plaintiffs' motion is GRANTED.

**Background**

    In their complaint plaintiffs allege they own or occupy real property in Escambia County, Florida, that adjoins Escambia Bay or Escambia River, or they have business ventures whose operations rely on these bodies of water or their tributaries.  Each of the plaintiffs is a resident of Florida; none of the defendant companies is. Solutia, Inc. ("Solutia") owns a chemical plant located along the banks of the Escambia River near

---

[1] Defendants filed a response to plaintiffs' motion to which, with leave of court, plaintiffs replied.

Gonzalez, Florida ("the Gonzalez Plant"), which plaintiffs allege is operated jointly by Solutia, Monsanto Company ("Monsanto") and Pharmacia Corporation ("Pharmacia").[2] Gary Moore ("Moore") has been a plant manager at the Gonzalez facility since October 2005, and he resides in Florida.  According to the allegations of the complaint, this action arises out of the defendants' past and continuing discharge of polychlorinated biphenyl ("PCB"), a chemical known to be hazardous to humans and marine life, from the Gonzalez Plant.  Plaintiffs allege this discharge has adversely affected the natural environment as well as their properties, businesses, and commercial ventures. Asserting claims in negligence, strict liability, and nuisance, plaintiffs seek as relief an injunction requiring defendants to cleanse the waters and sediments of Escambia Bay and Escambia River of PCB-containing products; monetary damages, including damages for injuries caused by interference with plaintiffs' riparian rights and/or commercial use of the properties at issue, decreases in property value, and stigma; attorneys' fees and costs; and other such relief as the court may deem proper.

In their notice of removal defendants assert that removal is timely and that all procedural requirements under 28 U.S.C. § 1446 have been satisfied.[3] Defendants additionally submit that although the complaint is silent with respect to the precise amount in controversy, it is facially apparent from the extensive relief sought that the $75,000 jurisdictional requirement of this forum has been exceeded.  Defendants also assert that even though Moore is a Florida resident, his joinder is fraudulent and thus complete diversity of citizenship exists among the parties. Therefore, according to defendants, removal is proper because the court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332.  In their motion to remand plaintiffs argue only that Moore's joinder is not

---

[2] Plaintiffs also name numerous fictitious defendants.  For purposes of removal, the citizenship of fictitious defendants is disregarded.  28 U.S.C. § 1441(a).

[3] The defendant companies removed the case prior to service of process being effected on Moore, noting in their removal papers that Moore intended to consent once served.  Since the filing of the notice of removal, Moore was served and filed a consent to removal.

fraudulent, thus destroying complete diversity and making removal improper.[4]  As Moore is a proper party to this action and the court lacks subject matter jurisdiction over the claims, plaintiffs contend, the case must be remanded to state court.

**Legal Standards**

A defendant may remove to federal court any civil case filed in state court if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Darden v. Ford Consumer Finance Co., Inc.*, 200 F.3d 753, 755 (11th Cir. 2000). Diversity jurisdiction is an adequate ground for removal, *see Pancho de Perez*, 139 F. 3d at 1373, but diversity jurisdiction only exists when there is complete diversity among the parties.  *See* 28 U.S.C. § 1332; *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d 1284, 1287 (11th Cir. 1998).  As the party seeking federal jurisdiction, the defendant bears the burden of establishing diversity jurisdiction. *Sammie Bonner Constr. Co. v. W. Star Trucks Sales, Inc.*, 330 F.3d 1308, 1310 (11th Cir. 2003); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Because removal is a statutory right it is "construed strictly in favor of state court jurisdiction." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *see also University of Southern Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

A defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921).  Thus courts recognize an exception to the complete diversity requirement for cases in which a non-diverse party has been fraudulently joined.[5]  *See Crowe v. Coleman*, 113 F. 3d 1536, 1538 (11th Cir. 1997).  Joinder may be deemed fraudulent when there is no possibility that the

---

[4] Thus plaintiffs do not dispute that defendants timely removed this case, that § 1446's procedural requirements have been met, or that the amount in controversy has been satisfied.

[5] The fraudulent joinder doctrine "tries to strike a reasonable balance among not rewarding abusive pleading by the plaintiff, the plaintiff's tactical prerogative to select the forum, and the defendant's statutory right to remove." 14B Wright & Miller, *Federal Practice and Procedure* § 3723.

Case No. 3:08cv320/MCR

plaintiff can establish a cause of action against the non-diverse defendant.[6] *Triggs*, 154 F.3d at 1287 *(citation omitted)*.

**Discussion**

Defendants assert there are three reasons the court should deny plaintiffs' motion to remand: (1) there is no reasonable possibility that plaintiffs' conclusory, generalized allegations can establish a claim against Moore; (2) plaintiffs allege only economic loss but, as a matter of Florida law, a corporate employee is not liable to third parties for economic losses; and (3) defendants have submitted evidence that establishes there is no factual support for plaintiffs' conclusory allegations against Moore. The court addresses these arguments in turn.

The parties agree that under Florida law[7] a corporate officer or agent may be individually liable in negligence for acts he committed within the course and scope of his employment if the plaintiff alleges and proves the agent owed a duty to the plaintiff, the duty was breached through personal (as opposed to technical or vicarious) fault, and the breach caused injury to the plaintiff.[8] *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357 (Fla.

---

[6] The Eleventh Circuit has explained that there are two other situations in which joinder may be deemed fraudulent, neither of which is pertinent to the instant case: (1) when there is outright fraud in the plaintiff's pleading of jurisdictional facts, and (2) when a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Triggs*, 154 F.3d at 1287.

[7] Florida law governs the substantive issues in this case and thus must be consulted to determine whether plaintiffs can establish a cause of action against Moore. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir.1989).

[8] Defendants also seek to impose the requirement that in order to state a claim for relief plaintiffs must allege that Moore's participation in the complained-of conduct materially and substantially contributed to their injuries because "more than one defendant's conduct could have produced the injury." (Doc. 41 at 11). The court declines to impose this requirement here.

Under Florida law the "'proximate cause'" element of a negligence action embraces . . . a causation-in-fact test, that is, the defendant's negligence must be a cause-in-fact of the plaintiff's injuries." *Tieder v. Little*, 502 So.2d 923, 925-26 (Fla. 3rd DCA 1987). Florida courts generally have followed a "but for" causation-in-fact test in negligence cases; in other words, "to constitute proximate cause there must be such a natural, direct and continuous sequence between the negligent act [or omission] and the [plaintiff's] injury that it can be reasonably said that but for the [negligent] act [or omission] the injury would not have occurred." *Id. (*citations omitted). There is a "substantial" factor" exception to the "but for" test which applies where "two causes concur to bring about an event in fact, either one of which would have been sufficient to cause the identical result." *Id.* (citing *Stahl v. Metropolitan Dade County*, 438 So.2d 14, 18-19 (Fla. 3d DCA

Case No. 3:08cv320/MCR

1st DCA 2005) (citing *McElveen v. Peeler*, 544 So. 2d 270, 271-72 (Fla. 1st DCA 1989) (finding personal participation in tortious act a prerequisite for imposing liability upon individual corporate officers or agents and rejecting liability based solely on general administrative responsibility)); *Accordino v. Wal-Mart Stores East, L.P.,* 2005 WL 3336503 (M.D. Fla. 2005); *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994).

Plaintiffs' allegations of negligence are sufficient to satisfy the pleading requirements of Fed.R.Civ.P. 8. Construing the pleadings broadly, accepting the material allegations of the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor, *see Sheuer v. Rhodes*, 416 U.S. 232, 236 (1974),*abrogated on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982), the court concludes the complaint includes "enough facts to state a claim to relief that is plausible on its face," *I. e.,* to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). First, with respect to Moore's owing a duty to the plaintiffs, the court notes that Florida law recognizes "that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others" and that the duty imposed is either to lessen the risk or see that sufficient precautions are taken to protect others from the harm the risk poses. *See McCain v. Florida Power Corp.,* 593 So.2d 500, 503, n.2 (Fla. 1992). This definition of duty fits the facts of the instant case, and the complaint's allegations are sufficient to suggest that this required element is plausible. Furthermore, a Florida court could conclude that Moore owes plaintiffs a duty of care even though they allege only economic loss. While acknowledging the general rule regarding the liability of a corporate agent to third parties, expressed in Restatement (Second) of Agency § 357 (1958) ("An agent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests

---

1983)). Such a circumstance, which *Tieder* describes as being a "narrow" one, permits application of the substantial factor exception to deem the defendant's conduct "a cause [in fact] of the event if it was a material and substantial factor in bringing it about." *Loftin v. Wilson*, 67 So.2d 185, 191 (Fla. 1953). Under the facts of this case (including that other industrial plants operate in the same general area where the defendants' facility is located) and in the context of reviewing a motion to remand, the court perceives no basis for application of the narrowly applicable "substantial factor" exception to Moore's alleged conduct.

Case No. 3:08cv320/MCR

are thereby harmed"), the Eleventh Circuit has noted that this rule "has not prevented the Florida courts from extending an agent's duty from his principal to a third party where circumstances warrant." *Citibank, N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 694, n.10 (11th Cir. 1987) (citing *First American Title Ins. Co. v. First Title Service Co.*, 457 So.2d 467, 473 (Fla. 1984), and *Robinson v. John E. Hunt & Assoc.*, 490 So.2d 1291, 1293 (Fla.Dist.Ct.App. 1986)). The general rule regarding the liability of corporate agents to third parties, as adopted by the Florida courts, thus is not inviolable, as defendants would have it.[9] In addressing a claim of fraudulent joinder, the court should resolve any uncertainties about state substantive law in the plaintiff's favor. *Crowe*, 113 F.3d at 1538. The court cannot conclude that, under the facts of this case, Florida law might not likewise be extended to impose a duty here on Moore, *i.e.*, to find that a plant manager has a duty to lessen the risk of injury to persons who might be affected by PCB contamination from his plant or implement precautions sufficient to protect those persons from the harm the PCB contamination poses. Moreover, the complaint adequately alleges Moore's personal breach of the duty owed to plaintiffs and injury to the plaintiffs that was proximately caused by the defendant's breach. *See Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that under *Twombly* a complaint is sufficient if it succeeds in "identifying facts that are suggestive enough to render [the element] plausible."*Id.* (citing *Twombly*, 127 S.Ct. at 1965). Therefore, based on the allegations of the complaint, the court cannot conclude there is no possibility that the plaintiff can establish a cause of action against Moore, the non-diverse defendant. *Triggs*, 154 F.3d at 1287.

---

[9] While the factual bases for the decisions in *First American Title Ins. Co.*, and *Robinson (*cited in *Citibank*, *supra*) are dissimilar, it appears that in each case the court found that the corporate agent owed a duty of care to third parties whom the agent could reasonably have expected would act in reliance on the principal's services or conduct. *First American Title Ins. Co.*, 457 So.2d at 473 ("Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs . . . not only to his customer but to the purchaser"); *Robinson*, 490 So.2d at 1293 (injured party may sue tortfeasor's insurance agent for negligence in failing to provide adequate insurance to the tortfeasor). To the extent a Florida court might conclude that a plant manager should reasonably anticipate that third parties would act in reliance on a corporation's safe operation of its chemical plant, *e.g.,* that third parties might purchase, reside on, or otherwise utilize property that could be affected by hazardous pollutants emanating from the employer's facility, under Florida law a duty of care could be extended to such third parties.

Case No. 3:08cv320/MCR

The defendants also urge that plaintiffs have provided no factual basis for their claims against Moore. More specifically, while denying there has been any known release of PCBs from the Gonzalez Plant since 1969, defendants contend that based on the undisputed evidence there is no reasonable possibility plaintiffs can prove Moore personally participated in any such discharge during his tenure as manager, which commenced in October 2005. Plaintiffs argue defendants have not presented clear and convincing evidence that there is no reasonable possibility a negligence claim based on Moore's role in the discharge of PCBs could be established in state court.[10]

The procedure used to resolve a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b). *Crowe*, 113 F.3d at 1538; *Lane v. Champion International Corp.*, 827 F.Supp. 701, 707 (S.D. Ala. 1993). The reviewing court must first determine whether the defendants have met their "heavy" burden of proving by clear and convincing evidence that the resident defendant was fraudulently joined. *See Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006); *Triggs*, 154 F.3d at 1287. If the defendants satisfy their initial burden, the burden shifts to the plaintiff to establish that genuine issues of fact or law exist concerning the appropriateness of the non-diverse defendant's joinder. *Lane*, 827 F.Supp. at 707. In assessing a claim of fraudulent joinder the district court is required to view all factual allegations in the light most favorable to the plaintiff. *Crowe*, 113 F.3d at 1538. The court should base its determination of joinder on the plaintiff's pleadings, supplemented by any affidavits, deposition transcripts, or other summary-judgment type evidence submitted by the parties, at the time of removal. *See Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005); *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 263 (5th Cir. 1995)

---

[10] Defendants attach numerous exhibits to their notice of removal, among them declarations from Moore and Solutia employee Amy Dyer ("Dyer"), who is identified as the Gonzalez Plant's Environmental Safety and Health Lead. Defendants also include with their response several lengthy reports and charts regarding sediment quality in the Pensacola Bay System. Plaintiffs also filed evidence with their motion, including "bioaccumulation" studies of fish in the Pensacola Bay region and the declaration of geologist Ronald J. Scrudato, Ph.D. ("Scrudato").

(noting that fraudulent joinder claims can be resolved by piercing the pleadings and considering "summary judgment-type evidence").

A plaintiff need not have a winning case against the non-diverse defendants; rather, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the [non-diverse defendants, the court] must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983),*superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)). Importantly, the court must not permit "the jurisdictional inquiry [to] subsume the substantive determination." *Crowe*, 113 F.3d at 1538 (citation and internal quotations omitted). The Eleventh Circuit has cautioned that a district court considering a motion to remand in a fraudulent joinder case must "not weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* In this regard, the Eleventh Circuit has further instructed:

> For a plaintiff to present an arguable claim against an in-state [*i.e.*, nondiverse] defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

*Crowe*, 113 F.3d. at 1541-42 (citation omitted) (emphasis in original). *See also Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) (stating that "if, there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.") (citing *Henderson*, 454 F.3d at 1284). *See also Campana v. American Home Products Corp.*, 2000 WL 35547714, *2-3 (N.D.Fla. 2000); *Lane*, 827 F.Supp. at 707. Moreover, "district courts must exercise

extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them. In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims."[11] *Crowe*, 113 F.3d at 1542.

      Dyer, the Gonzalez Plant's Environmental Safety and Health Lead, states in her declaration that no PCBs have been detected in ground water samples taken from monitoring wells near the Gonzalez Plant since at least 1984, some twenty years before Moore became manager of the Plant. Dyer further represents that a dam and new outfall were constructed following a documented PCB leak from the Gonzalez Plant in 1969 to prevent additional contaminants from reaching the Escambia River and Bay. Defendants contend there is no evidence of recent PCB contamination of Escambia Bay or Escambia River, much less contamination that can be attributed to the Gonzalez Plant or Moore. In his declaration, however, Scrudato—plaintiffs' expert with a background in environmental research and site remediation—submits that negative test results do not mean that PCBs have not leached into the groundwater or surrounding soils. Rather, according to Scrudato, common laboratory procedures simply are incapable of measuring minute PCB concentrations at the levels often found in impacted water—levels that exceed state and federal standards for safe drinking water. Scrudato also states that due to surface water and groundwater migration PCB-polluted soils and sediments can serve as a source of contamination for nearby bodies of water. Dyer also acknowledges that in 1998 two soil samples taken from the Plant's solid waste management units revealed PCB contamination but that—nearly eleven years later—environmental remediation of the units, though recently approved by the state, has yet to be undertaken.

---

[11] As the foregoing accurately recites the law in this circuit for assessing claims of fraudulent joinder, the court need not delve into the merits of the parties' respective positions regarding the standards and procedures applicable to the fraudulent joinder analysis, which in some respects the parties hotly dispute. Nevertheless, the court notes that defendants appear to advocate an approach which would require plaintiffs at this early stage of the litigation to survive a motion for summary judgment and which would effectively have the court decide the merits of the case, in large part or entirely, on the fraudulent joinder issue alone. This is precisely the sort of result the Eleventh Circuit has warned courts to avoid in addressing motions to remand.

Case No. 3:08cv320/MCR

Upon review of the evidence submitted by the parties, in particular the evidence outlined above, the court is persuaded that the defendants have failed to show by clear and convincing evidence that Moore was fraudulently joined. *See Florence*, 484 F.3d 1293 at 1299; *Henderson*, 454 F.3d at 1281; *Crowe*, 113 F.3d at 1538. Even assuming the evidence was sufficient to find defendants had satisfied their initial burden, the court concludes that plaintiffs have come forward with evidence adequate to create a genuine issue of fact regarding whether Moore's joinder was proper. In short, drawing all reasonable inferences and resolving all contested issues of fact in favor of plaintiffs, the court concludes there is a reasonable basis for predicting that a state court could impose liability against Moore in negligence with respect to the alleged PCB-contamination of the Escambia Bay system. *See Crowe*, 113 F.3d at 1541-42. As discussed, plaintiffs are not required to demonstrate they ultimately will prevail against Moore and indeed this court expresses no opinion with respect to the matter. Rather, plaintiffs are entitled to remand "[i]f there is even a possibility that a state court would find that the complaint states a cause of action" against him. *Coker*, 709 F.2d at 1440. In light of the evidence outlined above, that possibility exists here.[12]

The proper joinder of the non-diverse defendant Moore results in destroying complete diversity in this case and depriving the court of subject matter jurisdiction.[13] Plaintiffs' motion to remand therefore is granted.[14]

Accordingly, it is ORDERED:

1.  Plaintiffs' motion to remand (doc. 17) is GRANTED. No action is taken by

---

[12] In light of the conclusion that a negligence claim could lie against Moore, the court need not consider whether there is a possibility a state court might find that the strict liability or nuisance claims also state causes of action.

[13] Defendants also filed two motions to dismiss which, at the parties' request, the court stayed pending disposition of the motion to remand. The motions to dismiss will remain for resolution by the state court following remand.

[14] As a final matter, the court notes that plaintiffs have not requested an award of costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c). In any event, the court concludes that plaintiffs are not entitled to such an award and therefore will not consider any such request.

Case No. 3:08cv320/MCR

this court on defendants' two pending motions to dismiss, which have been stayed.

     2.    This case is REMANDED to the Circuit Court in and for Escambia County, Florida.

     3.    The clerk is directed to take appropriate steps to effect the remand.

DONE and ORDERED this 20th day of February, 2009.

                                s/ *M. Casey Rodgers*
                                **M. CASEY RODGERS**
                                **UNITED STATES DISTRICT JUDGE**